# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

|  |  |
|---|---|
| **FERMIN ALDABE,** | |
| **Plaintiff,** | |
| | |
| **v.** | **3:25-cv-00166-CRK-MCR** |
| **INTACT INSURANCE GROUP USA LLC, HOMELAND INSURANCE COMPANY OF NEW YORK, and ENVIRONMENTAL SERVICES, INC.,** | |
| **Defendants.** | |

## INTRODUCTION

Fermin Aldabe ("Plaintiff") brings this action against Intact Insurance Group USA LLC ("Intact"), Homeland Insurance Company of New York ("Homeland"), and Environmental Services, Inc. ("ESI") (collectively, "Defendants").   See Second Amended Complaint at 1, May 5, 2025, ECF No. 25 ("SAC").   Plaintiff alleges the dispute arises from ESI's contractual obligations to validate and verify Plaintiff's claimed Greenhouse Gas ("GHG") emission reductions for two carbon forestry projects that Plaintiff contends would have generated carbon credits eligible for sale to third parties.  Id. ¶¶ 10–11, 13, 17.  The two contracts at issue are the "Contract Between Aldabe And ESI, Project 1" ("2011 Contract") and the "Contract Between

**OPINION AND ORDER - 1**

3:25-cv-00166-CRK-MCR

Aldabe And ESI, Project 2" ("2012 Contract").  Pl. Attach. to Second Am. Compl. at

1–34, May 16, 2025, ECF No. 25-1 ("Pl. Ex.").  Three motions to dismiss are pending

before the court.  See Defs. Homeland and Intact's Mot. to Dismiss Pl.'s Second Am.

Compl., May 30, 2025, ECF No. 34 ("Homeland/Intact Mot."); Def. ESI's Mot. to

Dismiss Pl.'s Second Am. Compl., July 14, 2025, ECF No. 53 ("ESI Mot."); Defs.' Joint

Mot. to Dismiss for Violation of the Ct.'s Protective Order, Aug. 25, 2025, ECF No. 68.

## BACKGROUND[1]

Plaintiff executed two contracts with ESI: the 2011 Contract and the 2012

Contract.[2]  SAC ¶ 10.  He alleges both contracts obligated ESI to verify and validate

Plaintiff's GHG reduction assertions for his carbon forestry projects,[3] in accordance

with the rules promulgated by the Verified Carbon Standard Association ("VCSA")

---

[1] The following facts are drawn from Plaintiff's factual allegations in the SAC, which are accepted as true for purposes of this motion to dismiss, and from documents attached to the SAC or incorporated by reference.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (on a motion to dismiss, facts plead in allegation are considered true); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (the court considers the complaint in its entirety, including documents incorporated by reference).  Fed. R. Civ. P. 10(c).

[2] The 2011 Contract titled "Contract for Services ESI Project No. VO11090.00" is associated with Plaintiff's "Project 1."  Pl. Ex. at 7.  The 2012 Contract titled "Contract for Services ESI Project No. VO12076.00" is associated with Plaintiff's "Project 2." See Pl. Ex. at 27.

[3] A "GHG assertion" is a statement about greenhouse gas performance, such as quantified emissions or removals, quantified project reductions, or compliance with ISO 14064 or other GHG program requirements.  See Pl. Ex. at 80.  "Validation" and "verification" are assurance processes used to provide intended users confidence that their GHG assertion is complete, accurate, consistent, transparent, and free of material discrepancies.  See Pl. Ex. at 80.

OPINION AND ORDER - 2

**3:25-cv-00166-CRK-MCR**

and International Organization for Standardization ("ISO").[4]  Id. ¶ 10.  Plaintiff further alleges ESI's verification and validation would have allowed him to obtain carbon credits for Project 1 and Project 2 (collectively, "Projects"), which he could then sell on the open market or through the Verified Carbon Standard ("VCS") Registry, with credits deposited to VCS Registry Account 1009, and compensation based on the credits sold.  Id. ¶ 13–14.  He also alleges the 2011 Contract and 2012 Contract conferred "unconditional rights" under ISO 14065 to rely on ESI's representations concerning the Projects.  Id. ¶ 14.

Plaintiff alleges that in early 2016 he approved ESI's "validation team" for Project 2 under the 2012 Contract.  Id. ¶ 53.  He further alleges that later in 2016 ESI appointed an individual Plaintiff identifies as "Mr. Jaeschke" to validate Project 2 without notifying Plaintiff.  Id. ¶¶ 54–55.  According to Plaintiff, Mr. Jaeschke lacked relevant experience, and Plaintiff would have rejected him had he known of the appointment.  Id. ¶¶ 54–57.  Plaintiff also alleges Mr. Jaeschke prepared calculations Plaintiff characterizes as "forged" and ESI relied on them to deny validation of Plaintiff's GHG assertions.  Id. ¶ 55–56.  Plaintiff contends that ESI's assignment of Mr. Jaeschke and the resulting validation work violated VCS standards and therefore breached the 2012 Contract.  Id. ¶¶ 54, 56–57.

---

[4]  The VCSA promulgates the "Verified Carbon Standards" ("VCS"), which govern registration of carbon projects and issuance of carbon credits.  See Pl. Ex. at 172–75. The VCSA also manages the "VCS Registry," which is a database for carbon emission projects.  Id. at 176.  The ISO rules govern the GHG assertion validation and verification processes, specifically providing requirements for "bodies who undertake GHG validation or verification."  See id. at 47.

**OPINION AND ORDER - 3**

**3:25-cv-00166-CRK-MCR**

Plaintiff also alleges that during the relevant period, ESI maintained professional liability coverage for errors and omissions underwritten by Defendant Homeland. Id. ¶ 19. He further alleges that in 2016, he asked ESI to notify Homeland of the alleged breach as the insurer of both the 2011 Contract and 2012 Contract. Id. ¶ 20. Plaintiff alleges that because of what he characterizes as "Homeland's refusal to settle [the underwritten liability policy] in good faith," he was compelled to continue working with ESI, which he contends ultimately resulted in the loss of the entire value of both 2011 Contract and 2012 Contract. Id. ¶ 23.

Plaintiff alleges both the 2011 Contract and 2012 Contract required ESI to assess whether the Projects complied with the VCS and ISO rules and to explain its determinations. Id. ¶ 10. He further alleges both contracts run until two years after the end of the Projects' thirty-year crediting periods, ending in 2043 and 2044 respectively, and that the VCS rules require retention of certification documents through those termination dates. Id. ¶ 11. Plaintiff also alleges both the 2011 Contract and 2012 Contract permitted ESI to amend its findings for two years after the crediting period ends, but only to correct errors or omissions ESI later discovered. Id. ¶ 11. Plaintiff alleges that at various points during performance, ESI determined Plaintiff owned the Projects and controlled VCS Registry account 1009 per VCS Standard § 3.11.1.[5] Id. ¶ 25. He alleges he supported his right to the credits by

---

[5] VCS Standard § 3.11.1 governs the rights to carbon emission credits. See Pl. Ex. at 136. It requires that any project be accompanied by documentary evidence establishing the right to the GHG emission "reductions and/or removals" that may be verified during the project. See id.

**OPINION AND ORDER - 4**

**3:25-cv-00166-CRK-MCR**

submitting a shareholder certificate and land title in the project description, as required by § 3.11.1. Id. ¶ 25.

However, Plaintiff alleges that in 2023, during the Florida state proceeding concerning the 2012 Contract, ESI "amended" its credit ownership determination and on that basis was "performing" the contract under VCS § 8.7.[6] Id. ¶¶ 21, 25–27. Plaintiff further alleges ESI's "amended" ownership assertions breached both the 2011 Contract and 2012 Contract because they were not made in accordance with the VCS-governed verification process, including VCS standards §§ 3.3.2, 3.5, 4.2, 5.2.3, 5.4, 6.3.3, and 6.3.7.[7] Id. ¶¶ 21, 28–30. Plaintiff alleges he suffered damages as a result, including the total loss in value of both the 2011 Contract and the 2012 Contract, lost opportunities to develop future projects, and fees incurred in the Florida state case. Id. ¶ 23.

Plaintiff separately alleges Intact directed ESI and its counsel to alter the credit ownership status shown in the VCS registry account. Id. ¶¶ 34–35. Plaintiff further alleges Intact directed ESI to pressure the VCSA to depart from its standards,

---

[6] VCS Section 8.7 allows the verification body to issue a revised validation report and statement upon finding facts that materially alter the original validation. Pl. Ex. at 63.

[7] VCS Section 3.5 requires the verification body to consider the "impartiality of its personnel." Pl. Ex. at 68. Section 4.2 outlines the steps a verification body must take in a verification process. Id. at 88. Section 5.2.3 requires the entity initiating the project to present the VCS with "the legal agreement(s) transferring the right to the GHG [credits]." Id. at 203. Section 5.4 requires the verification body act impartially and without conflicts of interest. Id. at 55. Section 6.3.3 requires the verification team have "sufficient technical expertise" to assess the project. Id. at 57. Section 6.3.7 requires the verification team leader have sufficient knowledge and expertise to assess the project. Id. at 58.

**OPINION AND ORDER - 5**

**3:25-cv-00166-CRK-MCR**

interfering with Plaintiff's relationship with VCSA and causing a loss in value of both Projects.  Id. ¶ 35, 42.  Additionally, Plaintiff alleges Intact interfered with his contractual relationship with ESI by directing ESI to change the credit ownership status and to stop communicating with Plaintiff.  Id. ¶¶ 48–52.

Defendants Intact and Homeland moved to dismiss the SAC on May 30, 2025. See generally Homeland/Intact Mot.  In the same filing, they also sought Rule 11 sanctions, including fees and costs, arguing Plaintiff has repeatedly refiled substantially similar claims, named Intact as a defendant despite prior notice that it was not ESI's insurer, and did so notwithstanding an adverse state court ruling. Homeland/Intact Mot. at 19–20.  On June 17, 2025, the court denied the sanctions request without prejudice because Rule 11 requires that a sanctions motion "be made separately from any other motion."  Order Denying Defendants' Mot. for Sanctions at 1–2, Jun. 17, 2025, ECF No. 45 (quoting Fed. R. Civ. P. 11(c)(2)).  The court permitted Defendants to renew any sanctions motion after resolution of their pending motions to dismiss.  Id. at 2.  Defendant ESI moved to dismiss Plaintiff's SAC on July 14, 2025.  See generally ESI Mot.  Plaintiff responded to all Defendants' motions to dismiss on July 23, 2025.  See generally [Pl.'s] Resp. in Opp'n to Defs.' Mot. to Dismiss, ECF No. 55, July 23, 2025 ("Pl. Resp.").

**OPINION AND ORDER - 6**

3:25-cv-00166-CRK-MCR

## PROCEDURAL BACKGROUND

I.    **Previous Litigation**

Plaintiff previously litigated disputes arising from the same subject matter in Massachusetts beginning in 2016 and in Florida state court beginning in 2018. SAC ¶ 15. Plaintiff filed an action in Massachusetts against ESI, the VCSA, and the American National Standards Institution ("ANSI"), asserting claims for "loss of good will" and for breach of ESI's alleged contractual obligation to review his Projects. Aldabe v. Env't Servs., Inc., No. CV 16-11067-MLW, 2017 WL 7035658 at *1 (D. Mass. Sept. 20, 2017). On November 7, 2016, ESI submitted a declaration stating it would no longer work on Project 2 due to a conflict of interest created by the litigation. Id. at *1; see also ESI Mot. at 6. Plaintiff sought injunctive relief on January 13, 2017, based on ESI's cessation of work. Aldabe, 2017 WL 7035658 at *1; SAC ¶ 15. On September 20, 2017, the district court dismissed the claims against ESI and VCS for lack of personal jurisdiction, dismissed the claims against ANSI for insufficient service of process, and denied Plaintiff's motion for summary judgment. Aldabe, 2017 WL 7035658 at *8.

On February 27, 2018, Plaintiff filed a breach of contract action against ESI in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida. See Fermin Aldabe v. Env't Serv., Inc., 2023 Fla. Cir. LEXIS 4923 (Fla. Dist. Ct. App.) ("Aldabe I"). Plaintiff alleged ESI's breach caused him to lose carbon credits to which he claimed entitlement. Aldabe I, 2023 Fla. Cir. LEXIS 4923, at *1. ESI contended Plaintiff was not the party in interest as to Project 2 because the project documents

**OPINION AND ORDER - 7**

**3:25-cv-00166-CRK-MCR**

identified Palma Efuus Ltd. as the entity entitled to proceeds from any carbon credits generated by the project.[8]  ESI Mot. at 7.

In Aldabe I, the court held that even if ESI validated Project 2 and carbon credits were generated, Plaintiff's own project documents provided that the credits and any proceeds belonged to Palma Efuus Ltd., not Plaintiff, making Palma Efuus Ltd. the only entity that could seek damages related to Project 2.  Aldabe I, 2023 Fla. Cir. LEXIS 4923, at 17.  The court explained that, under the VCS rules, "Proof of Right" is the documentation establishing an entity's right to all GHG emission reductions or removals generated by a project, and "Right of Use" is the unconditional ability to claim those reductions or removals.  Id. at 18.  The court noted the summary judgment record reflected that "Proof of Right" constitutes proof of ownership and confers Right of Use.  Id. at 18.  Applying those definitions, the court found Plaintiff lacked Proof of Right, and thus Right of Use, because his original project documents identified Palma Efuus Ltd. as the entity entitled to the credits.  Id. at 17–18.  On that basis, the court concluded Plaintiff could not assert Palma Efuus Ltd.'s ownership rights, had no entitlement to any proceeds from the sale of credits, failed to establish legally cognizable damages, and entered summary judgment for ESI.  Id. at 18.[9]

---

[8]  Plaintiff alleges Palma Efuus Ltd., along with Palma Efuus SRL and Redd Services, served as his "agents" during the Projects, and that he became the successor of Palma Efuus Ltd. and Palma Efuus SRL "prior to 2022."  SAC ¶ 16.

[9]  On March 21, 2022, Plaintiff filed a "verified shareholder derivative complaint" in this court on behalf of Palma Efuus Ltd. against ESI, Aster Global Environmental Solutions, Inc., and Terracon Consultants, Inc.  Fermin Aldabe v. Environmental

**OPINION AND ORDER - 8**

3:25-cv-00166-CRK-MCR

## II.   Motion to Dismiss for Failure to Comply with Court Order

Defendants moved for a protective order or, in the alternative, Rule 11 sanctions, alleging Plaintiff had engaged in offensive and threatening communications with defense counsel. See Defs. Mot. For Protective Order, Jul. 23, 2025, ECF No. 54. The court took the request for a protective order under advisement and denied the sanctions motion. Order Taking Under Advisement Defs. Mot. For Protective Order, Jul. 31, 2025, ECF No. 56. At an August 8, 2025 hearing, the court admonished Plaintiff to conduct himself with civility and warned that further misconduct could result in sanctions, contempt, or dismissal. Hr'g Tr. filed Aug. 25, 2025, ECF No. 67. The same day, the court sua sponte entered an order directing Plaintiff to conduct himself "with civility, respect, and proper behavior" and prohibiting abusive, profane, threatening, or harassing communications toward any Defendant's counsel or staff.[10] Order Directing Pl. to Comply at ¶ 1, Aug. 8, 2025,

---

Services, Inc., et al., Case No. 3:22-cv-326-MMH-MCR, ECF No. 4 (M.D. Fla. Mar. 24, 2022). On April 8, 2022, Plaintiff amended his complaint, removing ESI as a defendant in that action, citing the reason that he was presently suing ESI in state court. See id. The court dismissed the complaint without prejudice for lack of subject matter jurisdiction. See id. In commencing the present action, he repeated many of the same defects as in the previous action, and the court ordered him to provide sufficient jurisdictional information by April 14, 2025. See Order, Mar. 25, 2025, ECF No. 15.

[10]  The court denied Defendants' Joint Motion for Protective Order, including the embedded request for sanctions as moot following the hearing and the court's subsequent order. See Order Denying Def. Joint Mot. for Protective Order, Dec. 8, 2025, ECF No. 94. Separately, the court previously denied Homeland's and Intact's motion for sanctions. See Order Dismissing Def. Mot. for Sanctions, June 17, 2025, ECF No. 45. No Defendant thereafter filed a motion for sanctions. Accordingly, no motion for sanctions is presently before the court. To the extent that Homeland and Intact indicate in their motion to dismiss, with cited authorities, that the court would

**OPINION AND ORDER - 9**

3:25-cv-00166-CRK-MCR

ECF No. 65 ("Conduct Order"). The court warned that noncompliance could result in contempt or sanctions, including striking pleadings, monetary penalties, or dismissal with prejudice. Conduct Order at ¶ 2.

On August 22, 2025, Plaintiff emailed Defendants a motion captioned "Motion to Strike Defendants' Motions to Dismiss ECF 34 and ECF 53 and to Grant Default Judgment." See Defs.' Mot. to Dismiss with Prejudice Pursuant to FRCP 41(B) for Violation of the Ct.'s Protective Order, Ex. 1, Aug. 25, 2025, ECF No. 68-1. On August 25, 2025, Defendants jointly moved to dismiss the SAC with prejudice under Rule 41(b), arguing Plaintiff violated the Conduct Order, and attached Plaintiff's motion to strike as an example of the allegedly prohibited conduct. Defs.' Mot. to Dismiss with Prejudice Pursuant to FRCP 41(B) for Violation of the Ct.'s Protective Order, Aug. 25, 2025, ECF No. 68.

## JURISDICTION

The court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the SAC alleges complete diversity of citizenship and an amount in controversy exceeding $75,000. See SAC ¶¶ 1–5; 28 U.S.C. § 1332(a). Plaintiff is a citizen of North Carolina; ESI is a citizen of Florida; Intact is a citizen of Delaware and Minnesota; and Homeland is a citizen of New York and Minnesota. See id. ¶¶ 1–4. Although diversity jurisdiction exists, for the reasons explained below, the court concludes it lacks subject matter jurisdiction over Plaintiff's claim premised on an

---

be "more than justified" in awarding sanctions, see Homeland/Intact Mot. at 19–20, the court will not consider sanctions in the absence of a motion.

**OPINION AND ORDER - 10**

3:25-cv-00166-CRK-MCR

alleged 2023 breach of the 2012 Contract because it is barred by the <u>Rooker-Feldman</u> doctrine.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Fed. R. Civ. P. 12(b)(6); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). In evaluating plausibility, the court accepts well-pleaded facts as true and draws reasonable inferences in the plaintiff's favor, but it does not credit legal conclusions cast as factual allegations. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678–79. Although detailed factual allegations are unnecessary, the complaint must allege more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." <u>Twombly</u>, 550 U.S. at 555. An amended complaint supersedes preceding pleadings, which are no longer operative. <u>Pintando v. Miami-Dade Hous. Agency</u>, 501 F.3d 1241, 1243 (11th Cir. 2007) (per curiam). In ruling on a Rule 12(b)(6) motion, the court may consider the complaint and any exhibits attached to it. Fed. R. Civ. P. 10(c).

## DISCUSSION

Plaintiff asserts seven claims arising from the 2011 Contract and 2012 Contract: (1) ESI's alleged 2016 breach of the 2012 Contract; (2) ESI's alleged 2023 breach of the 2011 Contract based on representations made in prior state court litigation; (3) ESI's alleged 2023 breach of the 2012 Contract based on representations made in prior state court litigation; (4) tortious interference by ESI and Intact with

**OPINION AND ORDER - 11**

**3:25-cv-00166-CRK-MCR**

Plaintiff's contractual or business relationship with VCSA; (5) tortious interference by Intact with ESI's contractual or business relationships; (6) fraudulent inducement by ESI based on alleged misrepresentations that induced Plaintiff to enter the 2011 Contract and 2012 Contract; and (7) statutory bad faith against Homeland under Fla. Stat. § 624.155.  SAC ¶¶ 13–32.  All Defendants argue the court lacks subject matter jurisdiction under the Rooker-Feldman doctrine because relief would require this court to review and reject the state court's judgment.  Homeland/Intact Mot. at 2; ESI Mot. at 2.  ESI argues that the breach of contract and fraudulent inducement claims against it are barred by the statute of limitations.  ESI Mot. at 16–17.  Homeland and Intact argue that all claims against it are barred by the statute of limitations.  Homeland/Intact Mot. at 2.  ESI further argues Plaintiff's claim for the 2023 breach of the 2011 Contract and the 2012 Contract are barred by res judicata and Florida's litigation privilege, Plaintiff fails to plead fraudulent inducement with the particularity required by Rule 9(b), and Plaintiff fails to allege a tortious interference claim.  Id. at 2.  Homeland and Intact contend Intact is not a proper defendant because it is an indirect parent of Homeland that does not underwrite or issue insurance policies, and Florida's nonjoinder statute bars any direct action against Homeland as ESI's insurer.  Homeland/Intact Mot. at 2.

## I.    Breach of Contract Claims

Plaintiff asserts three breach of contract claims against Defendant ESI arising out of the 2011 Contract and the 2012 Contract.  SAC ¶¶ 10–11, 24–25, 53–54.  First, Plaintiff alleges ESI breached the 2012 Contract in 2016.  Id. ¶¶ 53–54.   Second,

**OPINION AND ORDER - 12**

3:25-cv-00166-CRK-MCR

Plaintiff alleges ESI breached the 2011 Contract and the 2012 Contract through statements made in ESI's summary judgment motion in Aldabe I. Id. ¶¶ 24–25. ESI moves to dismiss, arguing (1) Plaintiff fails to plead a claim for breach of the 2012 Contract; (2) the breach of contract claims are precluded because they were dismissed on the merits in a state court action; (3) the breach of contract claims are otherwise time-barred by Florida's statute of limitations; and (4) the alleged 2023 breach claims based on prior litigation statements are barred by the litigation privilege.[11] ESI Mot. at 10. As explained below: (1) the claim based on the alleged 2016 breach of the 2012 Contract is time-barred; (2) the claim that the 2023 litigation statements breached the 2012 contract is barred by the Rooker-Feldman doctrine, and, in any event, fails to state a claim under Rule 12(b)(6); and (3) the claim that the 2023 litigation statements breached the 2011 Contract likewise fails under Rule 12(b)(6).

### A.    Alleged 2016 Breach of the 2012 Contract

Plaintiff alleges that in 2016 ESI breached the 2012 Contract by appointing Mr. Jaeschke to perform project validations under the contract. SAC ¶¶ 53–58. Plaintiff contends Mr. Jaeschke: (1) lacked the experience necessary to perform validations; (2) was not an original member of the validation team and was appointed without notice to Plaintiff; (3) lacked the independence required to perform

---

[11] Because some of Plaintiff's breach of contract theories are barred by the statute of limitations and/or barred by the Rooker-Feldman doctrine, and because the remaining breach theories still fail to state a plausible claim, the court does not reach the issue of litigation privilege as to the contract claims.

**OPINION AND ORDER - 13**

**3:25-cv-00166-CRK-MCR**

validations; and (4) "forged" calculations.   Id. ¶¶ 53–58.   Plaintiff's claim based on this alleged 2016 breach is barred by Florida's statute of limitations.

Under Florida law, a plaintiff sufficiently pleads a breach of contract claim by alleging three elements: "(1) the existence of a contract, (2) a breach of the contract and (3) damages resulting from the breach."[12]  Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009) (quoting Friedman v. N.Y. Life Ins. Co., 985 So. 2d 56, 58 (Fla. Dist. Ct. App. 2008)).   A claim for breach of a written contract is subject to Florida's five-year statute of limitations.   Fla. Stat. § 95.11(2)(b).   The limitations period begins at the time the breach occurs, not when the plaintiff discovers the breach.  State Farm Mut. Auto. Ins. Co. v. Lee, 678 So. 2d 818, 820 (Fla. 1996) (citing Fla. Stat. § 95.11(2)(b)); see also Federal Ins. Co. v. Southwest Florida Retirement Ctr., Inc., 707 So. 2d 1119, 1122 (Fla. 1998) (citing Fla. Stat. § 95.11(2)(b)).

Here, Plaintiff's breach of contract claim under the 2012 Contract is barred by Florida's five-year statute of limitations.   See Fla. Stat. § 95.11(2).   The SAC alleges the breach occurred in 2016, when ESI appointed Mr. Jaeschke to the validation team without notifying Plaintiff, and when Mr. Jaeschke made "forged" calculations.  SAC ¶ 54–55.   Plaintiff did not file the SAC until May 2025—more than five years later. Plaintiff's allegation that he did not discover the breach until 2020 does not salvage the claim.   Under Florida law, a breach of contract cause of action accrues at the time of the breach, not upon discovery, as Plaintiff contends.   Id. ¶ 60; Federal Ins. Co. v.

---

[12]  A federal court exercising diversity jurisdiction applies the substantive law of the state in which it sits.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

**OPINION AND ORDER - 14**

3:25-cv-00166-CRK-MCR

<u>Southwest Florida Retirement Ctr., Inc.</u>, 707 So. 2d 1119, 1122 (Fla. 1998). Therefore, because the alleged breach occurred in 2016 and the limitations period is five years, the claim is dismissed as untimely.

### B. Alleged 2023 Breaches of the 2011 Contract and the 2012 Contract

Plaintiff also alleges ESI breached the 2011 Contract and 2012 Contract based on a statement ESI made in the 2023 state court litigation. SAC ¶ 21. Both theories fail. Plaintiff's claim under the 2012 Contract is barred by the <u>Rooker-Feldman</u> doctrine and, in any event, fails to state a claim. Plaintif's claim under the 2011 Contract also fails to state a plausible claim for relief.

### 1. Breach of 2012 Contract

Plaintiff alleges ESI breached the 2012 Contract through statements made during the state court litigation. In the state court action, ESI argued that Plaintiff had no right to the credits and therefore suffered no damages. SAC ¶ 25. Defendants respond that the <u>Rooker-Feldman</u> doctrine bars this claim because relief would require rejecting the state court judgment. Homeland/Intact Mot. at 2, 17–19; ESI Mot. at 2, 12; <u>Aldabe I</u>, 2023 Fla. Cir. LEXIS 4923 at 16–19. Defendants also contend the claim is time-barred under Florida's statute of limitations. Homeland/Intact Mot. at 13–15; ESI Mot. at 16–17. Because Plaintiff's requested relief would require this court to review and reject the state court's determinations regarding ownership of the credits, this court lacks subject matter jurisdiction over Plaintiff's breach of the 2012 Contract claim under the <u>Rooker-Feldman</u> doctrine.

**OPINION AND ORDER - 15**

3:25-cv-00166-CRK-MCR

The Rooker-Feldman doctrine deprives a federal district court of subject matter jurisdiction over claims that would require the district court to sit in review of a final state court judgment.[13]  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) ("28 U.S.C. § 1257 precludes a United States district court from exercising subject matter jurisdiction, in an action it would otherwise be empowered to adjudicate under a congressional grant of authority, e.g., § 1330 (suits against foreign states), § 1331 (federal question), and § 1332 (diversity)"); Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009).  The doctrine applies only in a narrow category of cases where a losing state court plaintiff claims injury from a state court judgment entered before the federal action began and effectively asks the federal court to act as an appellate tribunal by reviewing and rejecting that judgment.  Exxon Mobil Corp., 544 U.S. at 284.  See, e.g., Casale, 558 F.3d at 1260 (barring jurisdiction where plaintiff sought to enjoin enforcement of state contempt orders and could prevail only if the contempt judgments were wrong and effectively nullified); Landmark at West Place, LLC v. Hilton, No. 6:17-cv-346-Orl-40DCI, 2017 WL 1461341 at *4 (M.D. Fla. Apr. 24, 2017) (dismissing where a federal suit sought to overturn a final state eviction judgment and writ of possession entered before the federal action); May v. Morgan Cnty., Ga., 878 F.3d 1001, 1006–07 (11th Cir. 2017)

---

[13] District courts have "strictly original jurisdiction," and therefore cannot review or overturn state court judgments for alleged legal errors.  Rooker v. Fid. Tr. Co., 263 U.S. 413, 416 (1923).  The bar applies to claims that would require review and rejection of a state court decision in a particular case, but not to general challenges to an underlying rule that do not require revisiting a specific state adjudication.  D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 482–83 (1983).

**OPINION AND ORDER - 16**

3:25-cv-00166-CRK-MCR

(applying Rooker-Feldman to bar federal § 1983 and declaratory claims because success depended on overturning the state court's statute of limitations determination).  The inquiry is claim-specific and turns on the substance of the claim and requested relief, not on how the plaintiff labels or repackages it.  Behr v. Campbell, 8 F.4th 1206, 1211–13 (2021); Exxon Mobil Corp., 544 U.S. at 284.

Here, Plaintiff alleges ESI initially determined he was the owner of the credits under VCS § 3.11.1, but then "amended" that conclusion in 2023 through its statements in the state court action.[14]  SAC ¶¶ 25, 27–28.  Plaintiff filed this federal action after the state court entered judgment against him in Aldabe I.  See generally Aldabe I, 2023 Fla. Cir. LEXIS 4923; Homeland/Intact Mot. at 17–19; ESI Mot. at 12–13.  Plaintiff alleges ESI's arguments in the state court litigation breached the 2012 Contract and caused him to lose carbon credits.  SAC ¶ 28.  Granting the relief Plaintiff seeks would require this court to review and reject the state court's judgment finding that he had no rights to the credits.  See Aldabe I, 2023 Fla. Cir. LEXIS 4923 at 16–19; Homeland/Intact Mot. at 2, 17–19; ESI Mot. at 2, 12.  Because Plaintiff's claim is premised on that adverse judgment,[15] and on statements made during the

_____

[14]  Plaintiff claims specifically that ESI's arguments denying his ownership were made without ANSI approval and without complying with the VCS amendment standards incorporated into the 2012 Contract.  SAC ¶¶ 25, 27–28.

[15]  In Target Media Partners, the Eleventh Circuit held Rooker-Feldman did not bar a federal defamation claim because the challenged letter was sent after the state judgment became final, so the defamation claim could not have been adjudicated in the state case.  Target Media Partners v. Specialty Mktg. Corp., 881 F.3d 1279, 1286 (11th Cir. 2018).  The court also emphasized that Rooker-Feldman requires a direct attack on the state judgment, not merely overlap in factual background.  Target Media, 881 F.3d at 1287–88.  Here, by contrast, Plaintiff's theory challenges a

**OPINION AND ORDER - 17**

**3:25-cv-00166-CRK-MCR**

state court litigation, the claim is therefore barred by the <u>Rooker-Feldman</u> doctrine and must be dismissed for lack of subject matter jurisdiction.

Even assuming arguendo, that the court had subject matter jurisdiction, Plaintiff still fails to state a claim for breach of contract. To plead breach of contract, a plaintiff must allege: "(1) the existence of a contract, (2) a breach of the contract and (3) damages resulting from the breach." <u>Vega</u>, 564 F.3d at 1272 (citing <u>Friedman</u>, 985 So. 2d at 58). To plead breach, a plaintiff must allege facts showing the defendant failed to perform a contractual obligation it undertook. <u>See</u> Samuel Williston & Richard A. Lord, <u>Williston on Contracts</u> § 63:1 (4th ed. 2020).

Plaintiff alleges ESI's purported 2023 breach stems from statements ESI made in support of its summary judgment motion in <u>Aldabe I</u>. SAC ¶¶ 25, 27–28; <u>see generally</u> <u>Aldabe I</u>, 2023 Fla. Cir. LEXIS 4923. According to Plaintiff, during the 2012 Contract term, ESI determined that Plaintiff owned Project 2, and ESI later breached the 2012 Contract in 2023 by asserting in <u>Aldabe I</u> that Plaintiff had no right to the credits. <u>See</u> SAC ¶ 25. These allegations do not state a claim for breach of the 2012 Contract. Plaintiff pleads no facts showing that the challenged litigation statements violated any contractual duty ESI undertook. <u>See generally</u> <u>id.</u> He identifies no provision in the 2012 Contract requiring ESI to make a conclusive determination of credit ownership, nor any provision obligating ESI to adhere in perpetuity to a prior characterization of ownership. <u>See generally</u> SAC; <u>see also</u> Pl.

---

litigation position advanced in the state case that the state court adopted, so Plaintiff can prevail only if this court reviews and rejects that state court determination. <u>See</u> SAC ¶ 25; <u>Aldabe I</u>, 2023 Fla. Cir. LEXIS 4923 at 16–19.

**OPINION AND ORDER - 18**

**3:25-cv-00166-CRK-MCR**

Ex. at 27–30. Plaintiff also alleges the 2012 Contract conferred "unconditional rights" to rely on ESI's representations made by ESI. SAC ¶ 14. Plaintiff does not identify any contractual language granting him an "unconditional right" to rely on ESI's representation, much less a provision converting later litigation positions into a breach of contract. See generally id. Finally, Plaintiff relies on VCS Standard § 3.11.1, which he alleges was incorporated into the 2012 Contract and dictates how to document project ownership. See id. ¶¶ 25, 27, 31. Even assuming the VCS standards were incorporated, Plaintiff does not identify any provision, either in the 2012 Contract or the VCS standards, that imposes on ESI a contractual obligation to determine ownership on Plaintiff's behalf or to adhere indefinitely to any prior characterization of ownership.[16] See generally id.; see also Pl. Ex. at 27–30, 136. Because Plaintiff does not plausibly allege that ESI failed to perform a contractual obligation it owed under the 2012 Contract, his theory that ESI breached the 2012 Contract in 2023 fails to state a claim.[17]

### 2. Breach of 2011 Contract

Plaintiff alleges that statements ESI made in its summary judgment briefing in the state court action also breached the 2011 Contract. See SAC ¶ 25. ESI

---

[16] Section 3.11.1 of the incorporated VCS standards seems to impose an obligation on Plaintiff as the project proponent to provide "documentary evidence establishing . . . rights of use." Pl. Ex. at 136.

[17] ESI also argues the 2023 breach of contract claim for the 2012 Contract is barred by the statute of limitations and by res judicata. ESI Mot. at 2. Because the court concludes Plaintiff's breach of contract claim for the 2012 Contract is barred by the Rooker-Feldman doctrine and fails to state a claim, the court does not reach the issue of the claim's timeliness or the applicability of res judicata.

**OPINION AND ORDER - 19**

**3:25-cv-00166-CRK-MCR**

responds that Plaintiff does not plead any breach of the 2011 Contract or any resulting damages relating to Project 1. ESI Mot. at 10.

As discussed, to state a breach of contract claim under Florida law, a plaintiff must allege "(1) the existence of a contract, (2) breach of the contract, and (3) damages resulting from the breach." Vega, 564 F.3d at 1272 (citing Friedman, 985 So. 2d at 58). Plaintiff does not satisfy that standard here. Plaintiff pleads no facts from which the court can reasonably infer that ESI failed to perform any obligation it undertook in the 2011 Contract. See generally SAC; see also Iqbal, 556 U.S. at 678. He identifies no provision of the 2011 Contract that the challenged statements purportedly violated and alleges no nonconclusory facts showing nonperformance. Instead, Plaintiff relies on conclusory characterizations and excerpts from ESI's filings and a proposed order in a separate state court proceeding in which the 2011 Contract was not at issue. See generally SAC; see also Twombly, 550 U.S. at 555 (explaining that a complaint must do more than offer "labels and conclusions"). Plaintiff's conclusory allegations predicated on litigation statements in a different case do not supply the factual content required to state a breach claim for the 2011 Contract.[18]

## II.    Tortious Interference Claims

Plaintiff asserts tortious interference claims against Intact and ESI based on two theories: (1) Intact and ESI interfered with Plaintiff's alleged relationship with

---

[18] ESI also argues Plaintiff's claim for the 2023 breach of the 2011 Contract is barred by the statute of limitations and res judicata. ESI Mot. at 2. Because the court concludes that Plaintiff's claim for breach of the 2011 Contract fails to state a claim as well, the court does not reach the issue of that claim's timeliness or the applicability of res judicata.

**OPINION AND ORDER - 20**

3:25-cv-00166-CRK-MCR

VCSA and (2) Intact interfered with Plaintiff's 2011 Contract and 2012 Contract with ESI.  SAC ¶¶ 32–52.  Intact contends the claims are time-barred and, in any event, fail because Intact had no involvement in the underlying events and therefore could not have engaged in any "interference."  Homeland/Intact Mot. at 2, 12–15.

### A.    Tortious Interference with VCSA Claims Against Intact and ESI

Plaintiff alleges ESI and Intact tortiously interfered with his contractual and business relationship with VCSA, which maintains the VCS registry.  SAC ¶ 32–42. He asserts he had an existing contractual relationship with VCSA "by conduct," and Intact "directed ESI to convince VCSA" to breach its contract with Plaintiff.  Id. ¶ 35. Intact argues that even if Plaintiff had stated a claim, it would be time-barred. Homeland/Intact Mot. at 10–13.    Intact adds that as an indirect parent of Homeland,[19] it had no part in the Projects or in insuring ESI, and therefore Plaintiff fails to allege a plausible claim for relief against Intact.  Id. at 10–13.  ESI likewise argues Plaintiff fails to state a tortious interference claim because the SAC pleads only legal conclusions rather than facts.  ESI Mot. at 24.  For the reasons explained below, Plaintiff fails to state a claim for tortious interference, and the claim is otherwise barred by the statute of limitations.

Under Florida law, a tortious interference claim requires factual allegations showing: (1) the existence of a contract or business relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intentional and unjustified

---

[19]  Plaintiff alleges Homeland issued professional liability insurance policies to ESI in connection with both the 2011 Contract and 2012 Contract.  SAC ¶ 19.  He further alleges Homeland "refused to settle in good faith" a claim against ESI.  Id. ¶ 23.

**OPINION AND ORDER - 21**

3:25-cv-00166-CRK-MCR

interference; and (4) resulting damages.  Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc., 162 F.3d 1290, 1321 (11th Cir. 1998); Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So. 2d 381, 385–86 (Fla. Dist. Ct. App. 1999).  To plead the requisite relationship, the plaintiff must allege "an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered."  Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994).  A written contract is not required, but the allegations must support the existence of an actual agreement or understanding that affords the plaintiff existing or prospective legal or contractual rights.  Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc., 262 F.3d 1152, 1154 (11th Cir. 2001) (citing Ethan Allen, 647 So. 2d at 814); Collier HMA Physician Mgmt., LLC v. NCH Healthcare Sys., Inc., 591 F. Supp. 3d 1204, 1215 (M.D. Fla. 2022) (citing Ethan Allen, 647 So. 2d at 814).  For the interference to be "unjustified," the defendant must be a "stranger" to the business relationship.  Salit, 742 So. 2d at 386.  A defendant is not liable for tortious interference if it is a party to the relationship or has a beneficial or economic interest in it.  Emergency Recovery, Inc. v. Gov't Emps. Ins. Co., 773 F. Supp. 3d 1304, 1310 (M.D. Fla. 2025) (quoting Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc., 13 So. 3d 1090, 1094 (Fla. Dist. Ct. App. 2009)).

A claim for tortious interference with a contractual relationship is subject to a four-year statute of limitations.  Fla. Stat. § 95.11(3)(o).  As discussed, the Florida limitations period begins to run when the last element of the cause of action occurs. Fla. Stat. § 95.031.  Florida law does not apply the doctrine of delayed discovery to

OPINION AND ORDER - 22

3:25-cv-00166-CRK-MCR

claims of tortious interference, so the plaintiff's delayed discovery of the alleged interference does not toll or otherwise affect the accrual of the limitations period. King v. Bencie, 806 F. App'x 873, 876 (11th Cir. 2020) (citing Yusuf Mohamed Excavation, Inc. v. Ringhaver Equip., Co., 793 So. 2d 1127, 1128 (Fla. Dist. Ct. App. 2001)).

Plaintiff's claim for tortious interference against Intact is barred by the Florida statute of limitations. From the face of the SAC, any interference that took place began in June 2016, and lasted only until VCSA cut off communications with Plaintiff in September 2016. SAC ¶¶ 20–21, 23–24. Plaintiff does not make sufficient factual claims to make out when an actual injury occurred as a result of any tortious interference, but asks for damages based on "20 hours a week since 2011." Id. ¶ 23. Thus, based on the facts in the SAC, the last element of the tortious interference claim had to have occurred in 2016, and the claim accrued at that time. Fla. Stat. § 95.031; King v. Bencie, 806 F. App'x 873, 876 (11th Cir. 2020). Plaintiff filed this action in 2025, outside the four-year limitations period. Fla. Stat. § 95.11(3)(o). Plaintiff argues the statute of limitations does not apply because (1) his claim did not accrue until he discovered the interference in 2023, and (2) Defendants' concealment and misleading conduct caused his delay and estops them from asserting limitations defense. SAC ¶¶ 38–41, 47–51. Plaintiff's allegation that he did not discover the tortious interference until 2023 has no effect on Plaintiff's claim, because Florida does not recognize the delayed discovery doctrine for claims of tortious interference. King,

OPINION AND ORDER - 23

3:25-cv-00166-CRK-MCR

806 F. App'x at 876.  Therefore, Plaintiff's claim of tortious interference with VCSA against Intact is time-barred and must be dismissed.

Even if a claim for tortious interference was timely, the allegations against Intact and ESI fail to state a claim.[20]  Plaintiff alleges he had "by conduct a contractual and business relationship with VCSA regarding both projects."  SAC ¶ 32.  The VCSA maintains the VCS Registry, a project database for owners of VCS projects to sell their carbon credits.  Id. ¶¶ 13, 32.  Plaintiff alleges his projects were registered in the VCS database and he agreed to pay VCSA $0.15 for each credit sold through the VCS registry.  Id. ¶ 32.  He also alleges that in exchange for that payment, VCSA agreed to ensure that ESI complied with the VCS rules. Id.¶ 32.

Assuming arguendo that Plaintiff's allegations identify an "actual and identifiable understanding or agreement," which in all probability would have been completed absent interference, he still fails to plausibly allege an unjustified

---

[20] ESI makes a general statement that all claims against it are time-barred.  See ESI Mot. at 2.  However, as to the tortious interference claims, ESI argues only failure to state a claim and does not meaningfully develop any statute of limitations argument. See ESI Mot. at 24–25. Arguments not "plainly and prominently" raised are treated as abandoned, and the court is not required to act as counsel and construct undeveloped theories.  Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681–82 (11th Cir. 2014); Resolution Tr. Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995).  That rule applies to limitations defenses and permits dismissal "where it is apparent from the face of the complaint that the claim is time-barred." Wainberg v. Mellichamp, 93 F.4th 1221, 1224 (11th Cir. 2024) (per curiam) (quotation marks omitted).  Thus, where the limitations bar is facially apparent, the court may consider timeliness even if not argued by the movant.  Valsaint v. City of Miami Beach, Fla., No. 23-11084, 2024 WL 3024886, at *3 (11th Cir. June 17, 2024) (citing Grant v. Preferred Rsch., Inc., 885 F.2d 795, 797–98 (11th Cir. 1989); Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1321 n.4 (11th Cir. 2006)).  Accordingly, although ESI does not substantively press a limitations defense as to tortious interference, the court evaluates timeliness to the extent it is apparent from the face of the complaint.

**OPINION AND ORDER - 24**

3:25-cv-00166-CRK-MCR

interference resulting in injury. See Johnson, 162 F.3d at 1321. Plaintiff does not sufficiently allege ESI was a "stranger" to any business relationship that may have existed between Plaintiff and VCSA. See generally SAC; Salit, 742 So. 2d at 386. Indeed, Plaintiff alleges any relationship he had with VCSA depended on VCSA's obligation to "ensure ESI complied with the VCS Rules." SAC ¶ 32. By Plaintiff's own allegations, ESI was directly implicated in, and would be affected by, the business relationship between Plaintiff and VCSA. SAC ¶ 32. ESI is therefore not a stranger to the relationship and cannot be liable for tortious interference. Emergency Recovery, 773 F. Supp. 3d at 1310 (quoting Palm Beach Cnty. Health, 13 So. 3d at 1094).

Plaintiff also fails to plausibly allege an interference occurred at all, because his SAC relies on bare assertions that ESI interfered rather than providing factual allegations identifying interfering conduct. See generally SAC. Plaintiff alleges Intact "directed ESI to convince VCSA" to "breach §2.5.6 of [the] VCS Guide" and to "allow ESI to demand Aldabe rewrite the project description."[21] Id. ¶ 35. He also alleges VCSA breached the VCS rules and ESI later "raised its findings" as a part of a "strategy with VCSA" to deny Plaintiff's assertions. Id. ¶¶ 36–37. Plaintiff pleads no facts identifying who at Intact gave direction, to whom it was given, when it occurred, or how any purported "direction" caused VCSA take any specific action. See Dynasty Management, LLC v. UMG Recordings, Inc., 759 F. App'x 784, 788–89 (11th

---

[21] Plaintiff does not include a definition or explanation of what §2.5.6 of VCS Guide requires. See generally SAC; Pl. Ex.

**OPINION AND ORDER - 25**

**3:25-cv-00166-CRK-MCR**

Cir. 2018) (where the final amended complaint provided nothing more than "formulaic recitation" of elements of tortious interference, and could not show how the defendants interfered with the relationship, the claim was dismissed). The SAC likewise contains no factual allegations that Intact had any contact with VCSA or ESI, or that it played any role in the verification or registration processes Plaintiff alleges were disrupted. See generally SAC. As to ESI, Plaintiff alleges only that ESI "raised its findings," without explaining what that means, when it occurred, to whom the findings were communicated, or how that conduct intentionally and unjustifiably interfered with any relationship between Plaintiff and VCSA. Id. ¶ 36. On the allegations in his complaint, Plaintiff fails to plausibly plead an intentional and unjustified interference. Johnson, 162 F.3d at 1321.

Further, Plaintiff fails to plead facts permitting a reasonable inference that any alleged interference with a business relationship between Plaintiff and VCSA caused him injury. Plaintiff asserts the alleged interference with a relationship between Plaintiff and VCSA caused him injury in the loss of: (1) the entire value of Project 1 and Project 2, including the credits associated and opportunities to sell them; (3) the opportunity to develop five additional projects; (4) "20 hours a week since August 2011;" and (5) court fees incurred in the 2023 state court litigation. SAC ¶ 42. Plaintiff's injury allegations are conclusory and do not plausibly plead causation. Plaintiff fails to allege facts connecting any specific act by ESI or Intact to the losses he claims to have suffered. See Twombly, 550 U.S. at 555–57; Iqbal, 556 U.S. at 678–79. Nor does Plaintiff plead facts showing he had an existing or

**OPINION AND ORDER - 26**

**3:25-cv-00166-CRK-MCR**

prospective right to any compensation, credit, or benefit from VCSA that, in all probability, he would have obtained but for ESI's or Intact's alleged interference. See SAC ¶ 35; see also Ethan Allen, 647 So. 2d at 813 (holding tortious interference damages may not rest on speculative future sales to past customers; plaintiff must show an "actual and identifiable" relationship, not a hope of repeat business). Because Plaintiff fails to allege factual content to support his claim that he suffered damages as the result of intentional and unjustified interference by ESI or Intact, he fails to state a plausible claim for tortious interference.

> **B.      Tortious Interference with ESI Claim Against Intact**

Plaintiff alleges Intact intentionally interfered with his contract with ESI by directing ESI and its counsel to cut off communications and conceal project information. SAC ¶ 48. He claims that Intact induced ESI to breach the duties owed to him under the 2011 Contract and the 2012 Contract, preventing ESI from validating his GHG assertions and causing him to lose the entire value of both projects, business opportunities, time, and litigation costs. Id. ¶¶ 43–52. Intact argues Plaintiff fails to plead a claim for tortious interference, and any claim is otherwise (1) barred by the statute of limitations and (2) barred by the Rooker-Feldman doctrine.[22] Homeland/Intact Mot. at 2. For the reasons that follow, Plaintiff fails to state a claim of tortious interference with ESI by Intact.

---

[22]  Intact contends the tortious interference claim against it is barred by the Rooker-Feldman doctrine because Aldabe I held Plaintiff lacked a showing of injury and "standing to pursue damages," i.e., the same damages sought here, rendering this suit an "impermissible collateral attack" on the state court judgment. Homeland/ESI

**OPINION AND ORDER - 27**

3:25-cv-00166-CRK-MCR

Plaintiff's claim fails because it relies on labels, conclusions, and speculative chains of causation rather than specific facts that demonstrate a plausible entitlement to relief. Twombly, 550 U.S. at 555–57; Iqbal, 556 U.S. at 678–79. Although Plaintiff repeatedly alleges that Intact "directed" ESI and "controlled" ESI's counsel through an Intact employee, he pleads no concrete, nonconclusory facts identifying who at Intact gave the alleged instructions, what those instructions were, when they were given, or how they were communicated. Nor does he allege facts showing the scope of any agency relationship or otherwise supporting a reasonable inference that ESI's conduct is attributable to Intact's direction. SAC ¶¶ 44, 47–49. Plaintiff similarly relies on conclusory knowledge and intent allegations, asserting only that Intact "knew or should have known" of the relevant terms. He pleads no facts showing what Intact actually knew about any specific ESI obligations to Plaintiff, when it knew it, or how that knowledge resulted in the intentional procurement of a breach. Id. ¶ 45. Finally, Plaintiff's damages theory relies on a long chain of "would have" events, including that he would have appealed and would have obtained the certificates. Id. ¶¶ 51–52. He pleads those outcomes as possibilities, not as facts that make it reasonable to infer that Defendant's conduct caused his

---

Mot. at 17. Rooker-Feldman, however, is a jurisdictional doctrine confined to cases that, in substance, seek federal appellate review of a state judgment and "does not otherwise override or supplant" preclusion principles. Exxon, 544 U.S. at 284, 291–92; Skinner v. Switzer, 562 U.S. 521, 532 (2011). Properly understood, Intact's contention is not that Plaintiff's alleged injury was caused by the state judgment, but that Aldabe I's injury and damages determinations should have preclusive effect, which is a merits defense rather than a jurisdictional bar. See Exxon, 544 U.S. at 293.

**OPINION AND ORDER - 28**

3:25-cv-00166-CRK-MCR

losses.  Id. ¶¶ 51–52.  Therefore, Plaintiff fails to plead the elements of a claim of tortious interference by Intact.

## III.   Fraudulent Inducement Claim Against ESI

Plaintiff alleges ESI fraudulently induced him to retain ESI by misrepresenting, through written offers and "team listings," that it had a qualified team and leader and could certify the Projects, even though ESI allegedly knew its personnel lacked the required competency.  Id. ¶¶ 63–71.  Plaintiff alleges he relied on those representations to his detriment.  Id. ¶¶ 63–71.  ESI moves to dismiss on the grounds that the claim is time-barred, unsupported by concrete facts, and not pleaded with the particularity Rule 9(b) requires.  See ESI Mot. at 17–24.  For the reasons explained below, the claim is time-barred, and in any event, Plaintiff also fails to plead fraudulent inducement with the particularity Rule 9(b) requires.  Fed. R. Civ. P. 9(b).

To state a claim for fraudulent inducement, a plaintiff must allege "(1) a false statement regarding a material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance."  Thompkins v. Lil' Joe Recs., Inc., 476 F.3d 1294, 1315 (11th Cir. 2007).  Rule 9(b) further requires that a party alleging fraud "state with particularity the circumstances constituting fraud," including the who, what, when, where, and how of the alleged misconduct and the resulting reliance.  Fed. R. Civ. P. 9(b).  Rule 9(b) requires a plaintiff to identify: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place,

**OPINION AND ORDER - 29**

3:25-cv-00166-CRK-MCR

and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud." Ferrell v. Durbin, 311 F. App'x 253, 258 (11th Cir. 2009) (per curiam). Allegations made "on information and belief" satisfy Rule 9(b) only when supported by specific facts supplying sufficient indicia of reliability. Vargas v. Lincare, Inc., 134 F.4th 1150, 1158–59 (11th Cir. 2025). The court is not required to "parse the complaint searching for allegations of misrepresentations that could conceivably form the basis of" a fraud claim. Ferrell, 311 F. App'x at 259. Generalized, conclusory assertions of fraud therefore do not suffice. See U.S. ex rel. Clausen v. Lab'y Corp. of Am., Inc., 290 F.3d 1301, 1310–12 (11th Cir. 2002).

Plaintiff's claim for fraudulent inducement is barred by the statute of limitations. Under Florida law, fraud claims are subject to a four-year statute of limitations. Fla. Stat. § 95.11(3)(i). Plaintiff alleges ESI fraudulently induced him to execute the 2011 Contract on December 8, 2011, and the 2012 Contract on November 9, 2012. SAC ¶¶ 63–66. Plaintiff also alleges fraudulent inducement as of January 26, 2016, when ESI appointed Mr. Jaeschke as the project validator notwithstanding the 2012 Contract's validator qualification requirements. See id. ¶¶ 53–55; 63–66. Each alleged inducement occurred more than four years before Plaintiff filed the SAC. Therefore, the fraudulent inducement claim is time-barred.

Even if the claim were timely, Plaintiff still fails to state a claim because he does not plead fraud with the particularity Rule 9(b) demands. Plaintiff references "offers" and "team listings" on three dates, but he does not identify the specific false

**OPINION AND ORDER - 30**

**3:25-cv-00166-CRK-MCR**

statements contained in those documents, who made them, when and where they were made, or how they amounted to actionable misrepresentations as opposed to general descriptions of personnel assigned to the work. Id. ¶¶ 63–66; Ferrell, 311 F. App'x at 258. Plaintiff likewise pleads falsity, knowledge, and intent in conclusory terms. See SAC ¶¶ 63–66. He alleges ESI "knew or should have known" its employees lacked the required competency and acted to profit, gain expertise, and avoid litigation, but he alleges no nonconclusory facts showing what ESI knew at the time of the asserted inducements, how it knew it, or why those alleged motives plausibly establish fraudulent intent. See id. ¶¶ 67–68; U.S. ex rel. Clausen, 290 F.3d at 1310–12.

Plaintiff likewise pleads reliance only at a high level. Plaintiff alleges he "concluded" from the team listings that ESI could perform and therefore hired ESI, but he does not connect any particular misrepresentation to a particular contracting decision in a manner that satisfies Rule 9(b). See SAC ¶ 66; Vargas, 134 F.4th at 1158–59. Finally, Plaintiff alleges broad categories of damages, including the entire value of the Projects, lost opportunity, lost time, and litigation costs, without factual allegations tying the losses to any specific misrepresentation through a non-speculative causal chain. SAC ¶ 71. Because Plaintiff does not plead the who, what, when, where, and how of the alleged fraud, he fails to state a fraudulent inducement claim against ESI.

**OPINION AND ORDER - 31**

3:25-cv-00166-CRK-MCR

## IV.    Claim of Statutory Bad Faith Claim Against Homeland

Plaintiff asserts a statutory "bad faith" failure-to-settle claim under Fla. Stat. § 624.155 against Homeland as ESI's professional liability insurer.[23] See SAC ¶¶ 19–23. Plaintiff alleges that after ESI's purported errors became apparent, Homeland refused to "settle in good faith," forcing Plaintiff to continue litigating and causing consequential losses. Id. ¶¶ 19–23. Homeland moves to dismiss, arguing that Florida's nonjoinder statute bars this direct action because Plaintiff, who is not party to the policy, may not sue a liability insurer absent a prior settlement or verdict against the insured. Homeland/Intact Mot. at 16–17; Fla. Stat. § 627.4136(1).

Florida's statutory "bad faith" scheme imposes duties on insurers and creates a civil remedy for specified violations. Fla. Stat. § 624.155(1). Among other things, the statute addresses an insurer's duty to attempt "in good faith to settle claims" when, under all the circumstances, it could and should do so had it acted fairly and honestly toward its insured and with due regard for the insured's interests. Fla. Stat. § 624.155(1)(b).[24] Separately, Florida's nonjoinder statute generally prohibits a third party from bringing a direct action against a liability insurer for a covered claim unless the third-party first obtains a settlement or verdict against the insured. Fla.

---

[23] Under Count I of the SAC, Plaintiff seeks damages based on "Homeland's refusal to settle in good faith with Aldabe." SAC ¶ 23. However, Plaintiff does not expressly identify Homeland as the defendant against whom Count I is asserted. See generally id. Because the SAC provides no basis to attribute that allegation to any other named defendant, the court construes Count I as asserted only against Homeland.

[24] In his complaint, Plaintiff only cites the civil remedy statute generally, Fla. Stat. § 624.155, in discussing his claim of "bad faith." See id. ¶ 13. However, in his response, he references the subsection at Fla. Stat. § 624.155(1)(b)(1) to support his assertion that Homeland had to "settle in good faith." See Pl. Resp. at 12–13.

**OPINION AND ORDER - 32**

**3:25-cv-00166-CRK-MCR**

Stat. § 627.4136(1). A direct action is permitted only for limited purposes, such as "entering final judgment or enforcing the settlement," or where the insurer owed the plaintiff an obligation independent of the insurance contract. Fla. Stat. § 627.4136(4); see also Hazen v. Allstate Ins. Co, 952 So. 2d 531, 538 (Fla. Dist. Ct. App. 2007) (citing Cresci v. The Yacht Billfisher, Off. No. 517-614, 874 F.2d 1550, 1551 (11th Cir. 1989)).

Here, Plaintiff's allegations against Homeland are derivative of ESI's alleged wrongdoing. Plaintiff alleges only that ESI breached a contract "underwritten" by Homeland. SAC ¶ 19. Plaintiff does not allege that he obtained a settlement or final judgment against ESI that would permit a direct action against Homeland to enter judgment or enforce a settlement. See Fla. Stat. § 627.4136(4). Nor does Plaintiff plead facts plausibly showing that Homeland owed him any obligation independent of the insurance contract. Hazen, 952 So. 2d at 538 (citing Cresci, 874 F.2d at 1551). Florida's nonjoinder statute therefore bars Plaintiff's statutory bad faith claim against Homeland, and the claim must be dismissed.

## V.    Plaintiff's Alleged Failure to Comply with Court Order

On August 8, 2025, the court ordered Plaintiff to conduct himself with civility and respect, and to refrain from any threatening or harassing communication or conduct toward Defendants. See Order Following Hr'g, Aug. 8, 2025, ECF No. 65. The court warned that noncompliance could result in contempt proceedings, sanctions, or dismissal of Plaintiff's pleadings. See id. On August 25, 2025, Defendants jointly moved to dismiss Plaintiff's claims with prejudice, asserting that Plaintiff violated the court's order through threatening conduct. See Defs.' Joint Mot.

**OPINION AND ORDER - 33**

**3:25-cv-00166-CRK-MCR**

to Dismiss With Prejudice For Violation of the Ct.'s Protective Order, Aug. 25, 2025,

ECF No. 68.  Because the court dismisses Plaintiff's claims as discussed above, it does

not reach Defendants' request for dismissal as a sanction.  See id.

## CONCLUSION

For the foregoing reasons, Plaintiff's claim against ESI for the alleged 2016

breach of the 2012 Contract is barred by the statute of limitations.  Plaintiff's claim

against ESI for the alleged 2023 breach of the 2012 Contract is barred by the Rooker-

Feldman doctrine and, in any event, fails to state a plausible claim for relief.

Plaintiff's claim against ESI for the alleged 2023 breach of the 2011 Contract likewise

fails to state a plausible claim.  Plaintiff's tortious interference claims against ESI

and Intact and fraudulent inducement claim against ESI fail to state plausible claims

and are barred by the statute of limitations.  Finally, Plaintiff's statutory bad faith

claim against Homeland is barred by Florida's nonjoinder statute.

In light of the foregoing, it is

**ORDERED** that Defendant ESI's motion to dismiss is GRANTED; and it is

further

**ORDERED** that Defendants Homeland and Intact's motion to dismiss is

GRANTED; and it is further

**ORDERED** that Plaintiff's claim for breach of contract against ESI for the

alleged 2016 breach is DISMISSED with prejudice and it is further

**OPINION AND ORDER - 34**

**3:25-cv-00166-CRK-MCR**

**ORDERED** that Plaintiff's claim for breach of contract against ESI for the alleged 2023 breach of the 2012 Contract is DISMISSED with prejudice; and it is further

**ORDERED** that Plaintiff's claim for breach of contract against ESI for the alleged 2023 breach of the 2011 Contract is DISMISSED without prejudice; and it is further

**ORDERED** that Plaintiff's claims for tortious interference against ESI and Intact are DISMISSED with prejudice; and it is further

**ORDERED** that Plaintiff's claim for fraudulent inducement against ESI is DISMISSED with prejudice; and it is further

**ORDERED** that Plaintiff's claim for bad faith against Homeland under Fla. Stat. § 624.155 is DISMISSED with prejudice; and it is further

**ORDERED** that Defendants' joint motion to dismiss for failure to comply with court order is DENIED as moot.

The Clerk is **DIRECTED to** close this case.

/s/ Claire R. Kelly
Claire R. Kelly, Judge*

Dated:    February 13, 2026
          New York, New York

---

* Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

**OPINION AND ORDER - 35**